UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHEYENNE B., Sr.,<br><br>                              Plaintiff,<br><br>      v.<br><br>KILOLO KITJAKZI, Acting<br>Commissioner of Social Security,<br><br>                              Defendant. | NO. 2:23-CV-0080-TOR<br><br>ORDER AFFIRMING<br>COMMISSIONER'S DENIAL OF<br>BENEFITS UNDER TITLES II & XVI<br>OF THE SOCIAL SECURITY ACT |

BEFORE THE COURT is Plaintiff's Motion for judicial review of Defendant's denial of his application for Title II and Title IX under the Social Security Act (ECF No. 11). This matter was submitted for consideration without oral argument. The Court has reviewed the administrative record, the completed briefing, and is fully informed. For the reasons discussed below, the Commissioner's denial of Plaintiff's application for benefits under Title II and Title XVI of the Social Security Act is AFFIRMED.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

## JURISDICTION

The Court has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

1    ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless

2    "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

3    *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

4    decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

5    *Sanders*, 556 U.S. 396, 409-10 (2009).

6                    **FIVE STEP SEQUENTIAL EVALUATION PROCESS**

7            A claimant must satisfy two conditions to be considered "disabled" within

8    the meaning of the Social Security Act.  First, the claimant must be "unable to

9    engage in any substantial gainful activity by reason of any medically determinable

10   physical or mental impairment which can be expected to result in death or which

11   has lasted or can be expected to last for a continuous period of not less than twelve

12   months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

13   impairment must be "of such severity that [he or she] is not only unable to do [his

14   or her] previous work[,] but cannot, considering [his or her] age, education, and

15   work experience, engage in any other kind of substantial gainful work which exists

16   in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

17           The Commissioner has established a five-step sequential analysis to

18   determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

19   404.152(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

20   considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a0(4)(i),

1    416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

2    Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

3    404.1520(b), 416.920(b).  Substantial work activity is "activity that involves doing

4    significant physical or mental activities," even if performed on a part -time basis.

5    20 C.F.R. § 404.1572(a).  "Gainful work activity" is work performed "for pay or

6    profit," or "the kind of work usually done for pay or profit, whether or not a profit

7    is realized."  20 C.F.R. § 404.1572(b).

8        If the claimant is not engaged in substantial gainful activities, the analysis

9    proceeds to step two.  At this step, the Commissioner considers the severity of the

10   claimant's impairment.  20 C.F.R. §§ 416.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

11   claimant suffers from "any impairment or combination of impairments which

12   significantly limits [his or her] physical or mental ability to do basic work

13   activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

14   416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

15   however, the Commissioner must find that the claimant is not disabled.  *Id*.

16       At step three, the Commissioner compares the claimant's impairment to

17   several impairments recognized by the Commissioner to be so severe as to

18   preclude a person from engaging in substantial gainful activity.  20 C.F.R. §

19   416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of

20

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 4

enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity" ("RFC") before awarding benefits.  RFC is generally defined as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)), and is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the RFC, the claimant is capable of performing work that he or she has performed in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Work in the national economy "means work which exists in significant numbers either in the region where [the] individual lives or in several regions of the country."  42 U.S.C § 423(d)(2)(A).

The Commissioner can meet this burden by soliciting the impartial testimony of a vocational expert ("VE"). *White v. Kijakazi*, 44 F.4th 828, 833-34 (9th Cir. 2022). In making this determination, the Commissioner must also consider factors such as the claimant's age, education and work experience. *Id*. If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

The claimant bears the burden of proof at steps one through four above, and a claimant who meets the first four steps has established a prima facie case of disability and entitlement to benefits. *White*, 44 F.4th at 833 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1550(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

"A finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (citing *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001)). When there is medical evidence of drug or alcohol addiction ("DAA"), the ALJ

must determine whether the DAA is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a).  In order to determine whether DAA is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling.  20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).  If the remaining limitations would not be disabling, DAA is a contributing factor material to the determination of disability.  20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).  If the remaining limitations would be disabling, the claimant is disabled independent of the drug or alcohol addiction and the addiction is not a contributing factor material to disability.  20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).  The claimant has the burden of showing that DAA is not a contributing factor material to disability.  *Parra*, 481 F.3d at 748.

### ALJ's Findings

On July 15, 2020 Plaintiff applied for Title II disability and disability insurance benefits and Title XVI supplemental security income, with an alleged onset date of April 1, 2016.  Administrative Transcript ("Tr.") ECF No. 6 at 38. Plaintiff's earning records indicate that he was insured through December 31, 2018, and thus the ALJ considered whether or not he was disabled from that point onward.  Tr. 38.  Plaintiff generally alleged that he was disabled due to

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 7

osteoarthritis of the cervical and lumbar spine, chronic obstructive pulmonary disease ("COPD"), tobacco abuse, depressive disorder, anxiety disorder, personality disorder, opioid/narcotic dependence, cannabis use disorder, hypertension, obstructive sleep apnea, and obesity.  Tr. 41.  Plaintiff's applications were initially denied on December 14, 2020, and on reconsideration on April 6, 2021.  Tr. 38.  By mutual agreement, the Administrative Law Judge ("ALJ") conducted a telephonic hearing on December 9, 2021.  Tr. 38.  The ALJ then denied Plaintiff's claims on January 10, 2022.  *See generally* Tr. 38-54.  Plaintiff's claims were denied on appeal on January 25, 2023.  ECF No. 6 at 5.

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018.  Tr. 40.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment activity since April 1, 2016.  Tr. 41.  At step two, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis of the cervical and lumbar spine, chronic obstructive pulmonary disease, tobacco abuse, depressive disorder, anxiety disorder, personality disorder, opioid/narcotic dependence, and cannabis use disorder.  Tr. 41.  The ALJ found that following impairments were not a significant limitation on Plaintiff's ability to perform basic work activities: obstructive sleep apnea, hypertension, and obesity.  Finally, the ALJ determined she would not

consider the presence of attention deficit hyperactivity disorder ("ADHD"), as inadequate testing existed on the record.  Tr. 41.

At step three, the ALJ determined that, based on the severity of his mental impairments and substance abuse disorder, Plaintiff was disabled per 20 CFR 404.1520(d), 404.1525, 416.920(d), 416.925).  Tr. 41. Based on the opinion of medical expert Dr. Sharon Kahn, the ALJ determined that Plaintiff met the criteria for personality and impulse control disorders while using substances.  Tr. 41.  Dr. Khan found no limitation with regard to understanding, remembering, or applying information, a moderate limitation in concentrating, persisting, or maintaining pace, and marked limitations both in interacting with others and adapting or managing self.  Tr. 41.  The ALJ noted that these findings were consistent with the record which reflects both narcotic dependence and cannabis use predating the alleged onset date.  Tr. 42.  For example, Plaintiff has a noted use of cannabis throughout the longitudinal period and a urine test in 2016 revealed barbiturate use despite without a prescription.  Tr. 42.  The record is also supported by consistent findings, each of varying degrees of persuasiveness, from psychological examinations conducted by Dr. Thomas Genthe in December 2017 and January 2020, a consultive psychological evaluation in May 2018 by Rebecca J. Alexander, Ph.D., and a psychological evaluation conducted by Brooke Sjostrom, LMHC in January 2021.  Tr. 42-43.

1    As part of the DAA analysis, the ALJ next considered Plaintiff's

2 impairments without substance use.  The ALJ ultimately determined that, even

3 absent substance abuse, Plaintiff would have severe physical and mental

4 impairments, but that such impairments would not meet or medically equal the

5 impairments as listed in 20 CFR Part 404, Subpart P. Appendix 1.  Tr. 43.  As to

6 Plaintiff's physical symptoms, the ALJ found that neither his spinal impairments

7 nor his COPD meet the requirements under 1.15 for disorders of the skeletal spine

8 resulting in a compromise of a nerve root, 1.18 for abnormality of a major joint, or

9 3.02 for chronic respiratory disorders.  Tr. 43-4.  The ALJ noted that Plaintiff has

10 not required the assistance of a walker, crutches, a cane, or a wheeled and seated

11 mobile device, nor has he been hospitalized three times in the last 12-months for

12 COPD related complications.  Tr. 44.

13    The ALJ determined that if Plaintiff stopped his substance use, his mental

14 impairments would not meet or exceed the required criteria for depressive disorder,

15 anxiety disorder, personality and impulse-control related disorders, and thus

16 determined that Dr. Kahn's testimony to be unpersuasive as it relates to Plaintiff's

17 limitations without substance use.  Tr. 44, 54.  The ALJ found that if Plaintiff

18 stopped substance use, he would have a mild limitation in understanding,

19 remembering, or applying information, which was supported by psychological

20 examinations.  Tr. 44.  Regarding interacting with others, the ALJ determined that

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 10

Plaintiff would have moderate limitation if he ceased his substance use, as evidenced by his disposition and mood when evaluated during periods of lessened use of cannabis. Tr. 44-45. The ALJ determined that Plaintiff would have a moderate limitation in concentrating, persisting, or maintaining pace if he stopped substance use, as the longitudinal record reflects that a consistent abnormal attention/concentration. Tr. 45. Finally, the ALJ found that Plaintiff would have a mild impairment in adapting or managing self if he stopped using substances. Tr. 45. This finding was supported by medical directives to cease using cannabis to improve the efficacy of medication to treat anxiety and depression. ECF No. 6 at 931. Additionally, the record reflects that during periods of lessened substance use, Plaintiff's presentation of grooming and hygiene improved, which the ALJ reasoned supported an improvement in self-management. Tr. 45.

Having found that, absent substance abuse, Plaintiff's impairments would not meet or exceed the required by "paragraph B," the ALJ next considered Plaintiff's RFC. Tr. 45-46. The ALJ found that the Plaintiff's impairments may be expected to cause some of the alleged symptoms, but that the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the record as a whole. Tr. 47.

As to Plaintiff's physical symptoms, the ALJ found that the record supported low back and neck pain with radicular symptoms in the left arm. Tr. 47. However,

the ALJ determined that the record did not support the overall level of pain reported as evidenced by a nerve conduction test in January 2016 and Plaintiff's report that the pain has been managed by medication.  Tr. 47.  Additionally, the ALJ found the record to be inconsistent with respect to Plaintiff's extremity strength and ability to lift 60 pounds as recently as June 2020.  Tr. 47.  The ALJ also determined that the severity of Plaintiff's reported COPD symptoms are inconsistent with the record as a whole.  Specifically, the ALJ found that in addition to not reporting a severe respiratory incident, Plaintiff has also not needed to refill his albuterol inhaler in a number of months, he continued to smoke cannabis across the longitudinal period, and has continued to engage in a variety of daily activities that are not supportive of severe respiratory-related restrictions including mowing the lawn, travel, and doing some household chores.  Tr. 47.

As to Plaintiff's mental impairments, the ALJ found discrepancy between the alleged severity and consistent notations that Plaintiff's anxiety and depression had been well managed with medication.  Tr. 49.  Additionally, those conducted psychological exams noted that, even in instances where Plaintiff presented with poor hygiene or a depressed mood, he still had an intact thought process and judgment.  Tr. 49.

Based on the above evidence, the ALJ determined that Plaintiff had an RFC with capability to perform the following:

[L]ight work as defined in 20 CFR 404.1567(b) and 416.967(b) except that postural activities could be performed occasionally and climbing ladders, ropes, or scaffolds, could never be performed.  Overhead reaching with the non-dominant left upper extremity would be limited to the frequent, not constant.  He would need to avoid concentrated exposure to industrial vibration, respiratory irritants, and hazards.  He would be able to understand, remember, and carry out simple, routine, repetitive tasks, and could maintain concentration, persistence, and pace on those types of tasks for the two-hour intervals required between regularly scheduled breaks throughout a 40-hour workweek. Interaction with the public, coworkers, and supervisors would be limited to superficial.  His work should deal with things rather than people.

Tr. 46.

At step four, the ALJ determined that, even if he stopped using substances, Plaintiff was not capable of performing his past relevant work as an automobile mechanic, a small engine mechanic, or a laborer at a petroleum refinery.  Tr. 52.

At step five, the ALJ made a finding of "not disabled."  Based on the Medical-Vocational Guideline Rule 202.18, the ALJ determined that given Plaintiff's age, education, work experience, and RFC, jobs exist in great number in the national economy which he could perform if he stopped substance use.  Tr. 52. The ALJ also consulted a vocational expert to address Plaintiff's specific limitations.  The vocational expert determined that Plaintiff was able to perform work such as routing clerk, production assembler, and assembler of electrical accessories.  Tr. 53.  However, the ALJ noted a discrepancy between the vocational expert's opinion and the Medical-Vocational Guidelines and provided

an explanation pursuant to SSR 00-4p.  SSR-04p requires the ALJ to identify a reasonable explanation for a conflict between occupational evidence provided by a vocational expert and information in the Dictionary of Occupational Titles ("DOT"), and then resolve the conflict.  SSR 00-4P (S.S.A.), *available at* 2000 WL 1898704.  In support of this divergence, the ALJ explained that, as the vocational expert testified, the suggested jobs fit within the hypothetical limitations that are not discussed in the DOT.  Tr. 53.  The ALJ ultimately determined that the occupations identified by the vocational expert were not entirely consistent, but that if Plaintiff ceased substance use, he would be capable of making a successful adjustment to work that exists in significant numbers in the national economy.  Tr. 53.  Thus, because Plaintiff's substance use disorders were a material contributing factor to the determination of disability, the ALJ found him to be not disabled.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying his application for Title II disability and disability insurance, and Title XVI supplemental security income of the Social Security Act.  Plaintiff raises the following issues on review:

I.    Whether the ALJ properly evaluated the medical opinion evidence per 20 CFR 404.1520c.

II.   Whether the ALJ failed to properly assess Plaintiff's RFC per SSR 16-3p.

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 14

III.     Whether the ALJ properly met the burden required by step five of the five-part test.

IV.     Whether the ALJ properly assessed Plaintiff's mental conditions in a longitudinal fashion.

ECF No. 11 at 2.

# DISCUSSION

## I.     The ALJ properly evaluated the medical opinion evidence per 20 CFR 404.1520c.

As Plaintiff filed these claims on July 15, 2020, the post-March 27, 2017, rules are controlling.  *See* 20 C.F.R. § 404.1520c; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017), *available at* 2017 WL 168819.  An ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a)–(b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include; supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."

1    20 C.F.R. §§ 404.1520c(c)(1)–(5).

2    The ALJ is required to explain how the two most important factors,

3    supportability and consistency, were considered. 20 C.F.R. § 404.1520c(b)(2).

4    These factors are defined as follows:

5        (1)    Supportability. The more relevant the objective medical
     evidence and supporting explanations presented by a medical source
6    are to support his or her medical opinion(s) or prior administrative
     medical finding(s), the more persuasive the medical opinions or prior
7    administrative medical finding(s) will be.

8

9        (2)    Consistency. The more consistent a medical opinion(s) or prior
     administrative medical finding(s) is with the evidence from other
     medical sources and nonmedical sources in the claim, the more
10   persuasive the medical opinion(s) or prior administrative medical
     finding(s) will be.

11

12   20 C.F.R. § 404.1520c(c)(1)-(2).

13   The ALJ may, but is not required to, explain how "the other most persuasive

14   factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§

15   404.1520c(b)(2).  However, where two or more medical opinions or prior

16   administrative findings "about the same issue are both equally well-supported ...

17   and consistent with the record ... but are not exactly the same," the ALJ is required

18   to explain how "the most persuasive factors" were considered.  20 C.F.R. §§

19   404.1520c(b)(2).

20   These regulations displace the Ninth Circuit's standard that require an ALJ

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 16

to provide "specific and legitimate" reasons for rejecting an examining doctor's

opinion.  *Woods v. Kijakazi,* 32 F.4th 785, 787 (9th Cir. 2022).

Plaintiff contends that the ALJ did not properly consider all testimony

offered by Dr. Khan because, according to Plaintiff, the ALJ did not offer a

sufficient explanation when discounting testimony related to the extent of

Plaintiff's limitations without substance use.  ECF No. 11 at 13.  Additionally,

Plaintiff contends that the ALJ erred in the formation of the RFC as it is

contradicted by Dr. Khan's testimony.  *Id*. at 14.

However, contrary to Plaintiff's claim, the ALJ did offer distinguishing

factors as support for not wholly accepting Dr. Kahn's analysis regarding

Plaintiff's mental limitations.  The ALJ need not "give any specific evidentiary

weight" to any medical opinions, but rather must consider factors in evaluating

medical opinions, including supportability and consistency.  Revisions to Rules,

2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. §§ 404.1520c(a),

404.1520c(c)(1)-(5).

The ALJ found Dr. Kahn's testimony regarding Plaintiff's limitations with

substance use to be persuasive, including a marked limitation in adapting or

managing oneself and a marked limitation in interacting with others, as consistent

with the record as a whole, including the findings of Dr. Genthe and Dr.

Alexander.  Tr. 42.

1    However, the ALJ specifically stated that Dr. Khan's finding of limitation

2    even without substance use was inconsistent with the record as a whole as other

3    psychological evaluations "assessed at least some degree of remission in terms of

4    some of the claimant's substance use, thus indicating a lesser degree mental

5    functioning limitation, such as in terms of interacting with others, with a lesser

6    degree of substance use." Tr. 50-51.  Further, the ALJ noted that the opinion of

7    Dr. Khan, as well as the opinions from Drs. Genthe and Alexander, were not well-

8    supported in the way the administrative medical findings of Drs. Jon Anderson and

9    Gary Nelson were supported because each lacked discussion of the medical

10    evidence of record from the initial and reconsideration levels of review.  Tr. 52.

11    Additionally, the ALJ noted inconsistencies between Plaintiff's limitation in

12    interacting with others and his testimony that he did not often have conflict in the

13    workplace and could not recall the last time he was upset with an employer.  Tr.

14    51.

15    The Court finds that the ALJ has met the burden of supportability and

16    consistency in deciding to find Dr. Kahn's testimony unpersuasive as it relates to

17    Plaintiff's limitations without substance use.

18    **II.    The ALJ properly assessed Plaintiff's RFC per SSR 16-3p.**

19    Plaintiff contends that the ALJ did not give proper weight to his subjective

20    symptoms in support of his limitations.  ECF No. 11 at 16.  Specially, Plaintiff

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 18

1  argues that his treating physician assistant's report provides support to his

2  described limitations, and that the ALJ improperly considered daily activities he

3  engages in as inconsistent with the limitations described.  *Id.*

4        An ALJ engages in a two-step analysis to determine whether to discount a

5  claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL

6  1119029, at *2.  "First, the ALJ must determine whether there is 'objective

7  medical evidence of an underlying impairment which could reasonably be

8  expected to produce the pain or other symptoms alleged.'"  *Molina*, 674 F.3d at

9  1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "The

10  claimant is not required to show that [the claimant's] impairment 'could reasonably

11  be expected to cause the severity of the symptom [the claimant] has alleged; [the

12  claimant] need only show that it could reasonably have caused some degree of the

13  symptom.'"  *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d

14  1028, 1035-36 (9th Cir. 2007)).

15        Second, "[i]f the claimant meets the first test and there is no evidence of

16  malingering, the ALJ can only reject the claimant's testimony about the severity of

17  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

18  rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

19  omitted).  General findings are insufficient; rather, the ALJ must identify what

20  symptom claims are being discounted and what evidence undermines these claims.

1   *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v.*

2   *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

3   explain why he or she discounted claimant's symptom claims). "The clear and

4   convincing [evidence] standard is the most demanding required in Social Security

5   cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

6   *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

7            Factors to be considered in evaluating the intensity, persistence, and limiting

8   effects of a claimant's symptoms include: (1) daily activities; (2) the location,

9   duration, frequency, and intensity of pain or other symptoms; (3) factors that

10  precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and

11  side effects of any medication an individual takes or has taken to alleviate pain or

12  other symptoms; (5) treatment, other than medication, an individual receives or has

13  received for relief of pain or other symptoms; (6) any measures other than

14  treatment an individual uses or has used to relieve pain or other symptoms; and (7)

15  any other factors concerning an individual's functional limitations and restrictions

16  due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7-*8; 20

17  C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the

18  evidence in an individual's record," "to determine how symptoms limit ability to

19  perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

20

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 20

1    In the matter at hand, the ALJ first determined that Plaintiff's medically

2    determinable impairments could reasonably cause some of the alleged symptoms,

3    but the intensity, persistence, and limiting effects of the symptoms were not

4    consistent with medical evidence.  Tr. 47.  In making this finding, the ALJ noted

5    that Plaintiff's treating physician assistant's opinion was unsupported as it related

6    to the rest of the record, as it appeared that Plaintiff's physical limitations have

7    been managed with treatment.  Tr. 47.  For example, the ALJ determined that the

8    medical evidence supported a history of back and neck pain, but Plaintiff had

9    consistently reported that his symptoms were eased with medication.  Tr. 47.

10    Additionally, Plaintiff's reported ability to use extremities and lift weight has not

11    been entirely consistent, as he has noted an ability to lift up to 60 pounds as

12    recently as June 2020.  Tr. 47.  Plaintiff has not reported respiratory distress and

13    has engaged in activities, such as mowing the lawn, driving for long distances,

14    engaging in some household chores such as taking out the trash, and cannabis use

15    across the longitudinal period, all of which do not connote the level of a severe

16    COPD-related limitation such that would support a finding of disability.  Tr. 47.

17    As the ALJ has properly noted discrepancies between the reported subjective pain

18    and the objective medical evidence, the Court will not disturb the finding.  *See*

19    *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022).

20

As to Plaintiff's mental functioning without substance use, the ALJ found that his symptoms were well managed with mental health medications. Tr. 49. Further, Plaintiff had presented with normal speech, intact thought process and attention/concentration, and intact memory, judgment, and cognitive function across the longitudinal record. Tr. 49.

Here, the ALJ has provided clear and convincing evidence for making an RFC determination, supported by factors derived from SSR 16-3p, and thus the Court upholds this finding.

III.    **The ALJ properly met the burden required by step five of the five-part test.**

Additionally, Plaintiff contends that the evidence submitted on internal appeal vindicates his claim that the ALJ did not meet the step five burden, but points to nothing that would allow the Court to reach such a conclusion. ECF No. 11 at 18-19. The Court assumes that Plaintiff is referring to a report created by Dr. McVee on March 30, 2022. ECF No. 6 at 23-26. However, the Court does not note any evidence contained in the report that would change the outcome as set forth by the ALJ. Additionally, Plaintiff seeks to make essentially the same argument here as above regarding Drs. Khan, Genthe, and Alexander's findings relating to the ALJ's RFC finding. ECF No. 11 at 19. In arguing that the ALJ's hypothetical is incomplete, Plaintiff is essentially making the same argument as

was made regarding his RFC capabilities, and the Court rejects the argument for same reasons as stated above. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1176 (9th Cir. 2008).

## IV.    The ALJ properly assessed Plaintiff's mental limitations in a longitudinal fashion.

Finally, Plaintiff argues that the ALJ has not considered the record in a longitudinal fashion, but points to no instance in the ALJ's findings to support this contention.  ECF No. 11 at 19.  In support of the finding, the ALJ made numerous references to the longitudinal nature of the review of the record.  Tr. 41, 44, 45, and 47.  Specifically as it relates to Plaintiff's mental limitations, the ALJ noted his appearance and demeanor at various examinations across the timeframe at issue, as well as his marked improvement in disposition when not using substances, were offered in support of the finding in a longitudinal fashion.  Tr. 44, 45.  Therefore, Plaintiff's argument fails as it lacks support.

## CONCLUSION

Having reviewed the record and the findings of the ALJ, the Court concludes that there was no error in the ALJ's decision.

//

//

//

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Opening Brief (ECF No. 11) is **DENIED**.

2.  Defendant's Response Brief (ECF No. 15) is **GRANTED**.  The final

    decision of the Commissioner is **AFFRIMED**.

The District Court Executive is directed to enter this Order and Judgment,

furnish copies to counsel, and **CLOSE** the file.

DATED November 28, 2023.



THOMAS O. RICE
United States District Judge

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 24